AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

District of Kansas

FILED
U.S. District Court
District of Kansas
SEP 8 2015
Clerk, U.S. District Court
By ______ Deputy Clerk

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

INFORMATION ASSOCIATED WITH TWITTER PROFILE WITH USERNAME @JERI_UP_DOWN AT HTTPS://TWITTER.COM/JERI_UP_DOWN SEE ATTACHMENT A

Case No. 15-M-6219-01-GEB

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the Northern District of California, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. 2252<br>18 U.S.C. 2252A | Possession, receipt and distribution of child pornography |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: __________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

[signature]
*Applicant's signature*

John V. Ferreira, SA, ICE
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/8/15

City and state: @ Wichita, Kansas

[signature]
*Judge's signature*

Gwynne E. Birzer, United States Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH TWITTER PROFILE WITH USERNAME @JERI_UP_DOWN AT HTTPS://TWITTER.COM/JERI_UP_DOWN THAT IS STORED AT PREMISES CONTROLLED BY TWITTER. | Case No. 15-M-6219-01-GEB<br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

I, John V. Ferreira, Special Agent of Homeland Security Investigations, being duly sworn, do hereby depose and state:

1. I make this affidavit in support of an application for a search warrant for information associated with a certain Twitter account that is stored at premises owned, maintained, controlled, or operated by Twitter, a social-networking company headquartered in San Francisco, CA. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Twitter to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the Twitter account.

2. I am a Special Agent of the Department of Homeland Security (DHS), Homeland Security Investigations (HSI), assigned to the Office of HSI Wichita, Kansas. I have been employed by HSI for over 10 years. Prior to service with HSI, I served for 9 years as a police officer for the Arizona Department of Public Safety. During my employment with HSI, I have had the opportunity to conduct, coordinate and participate in many

investigations relating to Child Pornography and the Sexual Exploitation of Children. I have had the opportunity to conduct, coordinate, and participate in investigations of violations of Title 18, United States Code (U.S.C) § 2252, certain activities relating to material involving the sexual exploitation of minors, and Title 18, U.S.C. § 2252A, certain activities relating to material constituting or containing child pornography. As a special agent of HSI, I am authorized to investigate violations of laws of the United States, and I am a law enforcement officer with authority to execute arrest and search warrants under the authority of the United States, including violations of Title 18, United States Code §2252 and 2252A. I have participated in a wide variety of criminal investigations, to include violent crime, crimes against children, document fraud, benefits fraud, illegal entry to the United States, and other federal crimes. I have participated in the preparation and execution of many search warrants, involving the sexual exploitation of minors and certain activities relating to material constituting or containing child pornography.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. 2252 and 2252A (relating to the possession, receipt, and distribution of child pornography) have been committed by the user of the Twitter account identified as **@jeri_up_down**, located at **https://twitter.com/Jeri_up_down**. There is also probable cause to search the

information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## DEFINITIONS

5. The following definitions apply to this Affidavit and Attachment B:

a. **"Child Pornography"** includes any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct; (b) the visual depiction was a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct; or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct. See 18 U.S.C. § 2256(8).

b. **"Minor"** means any person under the age of 18 years. See 18 U.S.C. § 2256(1).

c. **"Sexually explicit conduct"** applies to visual depictions that involve the use of a minor, see 18 U.S.C. § 2256(8) (A), or that have been created, adapted, or modified to appear to depict an identifiable minor, see 18 U.S.C. § 2256(8) (C). In those contexts, the term refers to actual or simulated (a) sexual intercourse (including genital-genital, oral-genital, or oral-anal), whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person. See 18 U.S.C. § 2256(2) (A).

d. **"Visual depictions"** include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. See 18 U.S.C. § 2256(5).

e. **"Child Erotica"** means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

## PROBABLE CAUSE

### The Initial Lead

6. On August 7, 2015, Special Agent (SA) Jay Ferreira (your Affiant) was assigned a lead associated with a foreign photo-sharing website[1] account, "twistedsoul," that had

[1] From previous investigations, Affiant knows this foreign photo-sharing website is frequently used by child pornographers to find like-minded individuals. Frequently, child pornographers post images of minors and

uploaded photographs of minor girls and solicited child pornography from other users of the website.

7. According to the lead information, the user of the "twistedsoul" account had posted approximately two dozen pictures of three females who were under the age of eighteen, and made comments suggesting the user had access to, and may be, victimizing the minors:

a. The photographs were posted in three folders. These folders are titled "Sweet H---", "sexy lil J--- 7yr" and "more H---."[2]

b. In the "User info" section, the user posted "7-12 I'm interested in. Doing whatever they do. Feel free to contact."

c. This user also made a comment to one of the pictures, "I'd love to fill them all too" in reply to "Sexy as hell. Do you want her too?"

d. There were no files uploaded to this account that were nude or contained pornography of the three females. However, this user placed tags for these pictures of buds, legs, preteen, and sexy.

e. Within the folder "more H---," the user made the comment "someone talk her into nudes. Send me pics if u do." The folder had pictures of a minor female and an Instagram account apparently associated with the minor.

8. The "twistedsoul" account was created on July 22, 2015 and had been accessed from a device on the Verizon Wireless network.

9. Some of the pictures associated with the minor females had EXIF data showing the pictures were taken with a Nokia 635 device (smartphone).

10. The user of the "twistedsoul" account also listed an email account, "jsoulless@yandex.ru."

---

comment about those images, thus self-identifying as individuals with a sexual interest in children. They then engage in additional trading activity via email or other image-sharing medium.

[2] The names associated with the folders have been redacted due to their association with actual minors known to law enforcement, referenced in paragraph 10.

11. The picture of the Instagram account provided information that lead to the identification of the minor female, as well as her family members, in Wichita, Kansas.

**Identification of the Minor Females**

12. Affiant enlisted the aid of the Kansas ICAC, Wichita Police Department, Detective Jennifer Wright, and confirmed the above reported information associated with the "twistedsoul" account.

13. Affiant and Det. Wright contacted the minors' mother, who identified the three minor females in the pictures as: H.N., an unmarried female born in 2002; J.C.C., an unmarried female born in 2007; and J.R.C., an unmarried female born in 2012.

14. Affiant interviewed H.N., who verified the Instagram account as being one she created and had set to private. H.N. said she has had individuals whom she does not know send her requests to access her account since July 22, 2015.

**Identification of Joshua Haskins as "jsoulless"**

15. The minors' mother identified the background of several of the pictures as being within their residence, and that certain pictures would have been taken in the last several months. During that time frame, Joshua Haskins had been at the residence.

16. According to the minors' parents, Haskins was homeless and had stayed their residence. Haskins had a smartphone that did not have cellular service, but he would use "wifi" to access the device. Haskins would rent out a "wifi" device from the library in Haysville, Kansas to gain access to the internet through this device. Haskins had a silver 2003 Mazda protégé car, which he had sold earlier this year.

17. Det. Wright utilized publicly available resources to research the screen name "jsoulless" (the moniker associated with the email account for "twistedsoul" profile). Det. Wright

found a posting where a user of the screen name "jsoulless" was offering to sell a Protégé in April 2015. The publicly available information associated with this user included a date of birth that matched Haskins. Additionally, in the "Basic Information" section, he listed his first name as Joshua, and his lonely post was titled "J and Toto from Ks." His post stated he resided in Kansas and needed to sell his 2003 Protégé car.

**Interview of Haskins**

18. On August 7, 2015, Affiant made contact with Joshua Haskins in Haysville, Sedgwick County Kansas.

19. Haskins had a black Nokia smartphone with a blue cover containing a black 4GB Kingston microSD card on his person.

20. Haskins also had a wifi device on his person for internet access on the Verizon Wireless network.

21. Haskins was read his Miranda Rights, which he waived. Affiant asked what kind of car he had, and Haskins said he previously had a silver 2003 Mazda Protégé. When shown a printout of the Protégé listing with the username "jsoulless," he initially said he made that posting, but then quickly changed his mind and said it was not him. When he was asked about the Nokia device and if a search could be done on it, he said he didn't want to assist us in "hanging him on whatever it was we had on him."

**Search of Haskins' devices**

22. Affiant requested and obtained a search warrant for the Nokia 635 smartphone and microSD card that was on Haskins when he was taken into custody.

23. WPD Detective Shaun Price completed forensic work and provided Affiant a CD with files that were located on the microSD card in the Nokia smartphone. Affiant viewed the following four files:

a. Ea8mf6m2nboex.webm: This is a movie file that is approximately 7:13 minutes in length. In this movie there is nude adult white male who is engaged in sexual intercourse with a nude white female. This female appears to be under the age of twelve based on Affiant's training and experience. The white female performs oral copulation on the adult male and he uses his finger to fondle and insert into her vaginal area during the video as well. This movie file was located on the microSD card under a folder titled "downloads."

b. M74vuhg8q7zvw3.webm: This is a movie file that is approximately 4:05 minutes in length. This is a movie file of numerous females all who appear to be under the age of ten and who are either engaged in masturbation of an adult white male's penis or oral copulation that they perform on the adult white male. One female, a white female who appears to be under the age of ten is performing oral copulation on a dog's penis. This movie file was located on the microSD card under a folder titled "downloads."

c. 009176Library Q=75).jpg: This is a picture of a white female who is nude from the waist down and a white towel is covering her other half. She appears to be under the age of two based on Affiant's training and experience. There is an erect white male's penis touching her vaginal area. This picture had been deleted but was recovered from the microSD card.

d. Kodak easyshare m753 zoom digital camera 2009-09-09 15_59_00.jpg: This is a picture file of a nude white female who is lying on her back. She appears to be under the age of two based on Affiant's training and experience. There is an erect adult white male's penis touching her vaginal area. This picture had been deleted but was recovered from the microSD card.

**The Twitter lead associated with "jsoulless"**

24. On August 17, 2015, Affiant was advised by Detective Jennifer Wright of a CyberTip report (number 4011396) made by Twitter to the National Center for Missing and Exploited Children's CyberTipline.

25. Twitter reported the upload of four picture files of child pornography from a Twitter account, **@jeri_up_down** (**TARGET ACCOUNT**).

26. The user of **@jeri_up_down** (**TARGET ACCOUNT**) provided account information, including:

a. Full Name: J
b. Location: Hell
c. Description: like what I like. All pics from the world wide web.
d. Phone number: 1-480-340-6202
e. Email account, jsoulless40@yahoo.com

27. These four pictures were uploaded to Twitter on February 25, 2015. Detective Jennifer Wright viewed the four pictures reported by Twitter. All four pictures contain the same white female who appears to be under the age of 8 based on her training and experience:

a. File "B-6nYBnVAAIANbt.jpg" is a picture file of the white female wearing a green shirt that she is pulling up while sitting with her legs spread apart with the focus of the picture being her vaginal area.

b. Files "B-6nYjOUZAAWjSX.jpg; B-6nZxSU0AAf9Oh.jpg and B-6nZZvU8AAUeYk.jpg" are of this same white female nude with the focus of each picture being her vaginal area.

28. Detective Jennifer Wright spoke to Chris Chadd, an employee of the Haysville Community Library who advised the wifi device that was in Haskins' possession was their property. He further advised there is a patron at the library who used the phone number 1-480-340-6202 (the same number seen in the **@jeri_up_down** account) when they created an account at the library.

29. Affiant obtained a subpoena for the patron information who used the phone number 1-480-340-6202. Affiant received the results on this subpoena on August 17, 2015 with this patron being Joshua Haskins, using the address in Wichita, Kansas where the children he posted pictures of reside, the phone number 1-480-340-6202 and email account "joshua.haskins@gmail.com."

30. Affiant obtained a subpoena for the subscriber of the cellular device using the phone number 1-480-340-6202 on February 25, 2015. Affiant received the results on this

subpoena on August 18, 2015. The subscriber for this phone number is Joshua Haskins, 6661 E. Arbor Avenue, Mesa, Arizona with this service being active on February 25, 2015 and ending on May 9, 2015.

31. Based on the foregoing information, Affiant has probable cause to believe that Joshua Haskins is the user associated with the following accounts:

a. **@jeri_up_down (TARGET ACCOUNT)**
b. joshua.haskins@gmail.com
c. jsoulless40@yahoo.com
d. jsoulless@yandex.ru

and that these accounts have all been used to access, receive, store, and distribute child pornography, or to create accounts that have been used to access, receive, store, or distribute child pornography.

**BACKGROUND RELATED TO TWITTER**

32. Twitter owns and operates a free-access social-networking website of the same name that can be accessed at http://www.twitter.com. Twitter allows its users to create their own profile pages, which can include a short biography, a photo of themselves, and location information. Twitter also permits users create and read 140-character messages called "Tweets," and to restrict their "Tweets" to individuals whom they approve. These features are described in more detail below.

33. Upon creating a Twitter account, a Twitter user must create a unique Twitter username and an account password, and the user may also select a different name of 20 characters or fewer to identify his or her Twitter account. The Twitter user may also change this username, password, and name without having to open a new Twitter account.

34. Twitter asks users to provide basic identity and contact information, either during the registration process or thereafter. This information may include the user's full name, e-

mail addresses, physical address (including city, state, and zip code), date of birth, gender, hometown, occupation, and other personal identifiers. For each user, Twitter may retain information about the date and time at which the user's profile was created, the date and time at which the account was created, and the Internet Protocol ("IP") address at the time of sign-up. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access a given Twitter account.

35. A Twitter user can post a personal photograph or image (also known as an "avatar") to his or her profile, and can also change the profile background or theme for his or her account page. In addition, Twitter users can post "bios" of 160 characters or fewer to their profile pages.

36. Twitter also keeps IP logs for each user. These logs contain information about the user's logins to Twitter including, for each access, the IP address assigned to the user and the date stamp at the time the user accessed his or her profile.

37. As discussed above, Twitter users can use their Twitter accounts to post "Tweets" of 140 characters or fewer. Each Tweet includes a timestamp that displays when the Tweet was posted to Twitter. Twitter users can also "favorite," "retweet," or reply to the Tweets of other users. In addition, when a Tweet includes a Twitter username, often preceded by the @ sign, Twitter designates that Tweet a "mention" of the identified user. In the "Connect" tab for each account, Twitter provides the user with a list of other users who have "favorited" or "retweeted" the user's own Tweets, as well as a list of all Tweets that include the user's username (*i.e.*, a list of all "mentions" and "replies" for that username).

38. Twitter users can include photographs or images in their Tweets. Each Twitter account also is provided a user gallery that includes images that the user has shared on Twitter, including images uploaded by other services.

39. Twitter users can also opt to include location data in their Tweets, which will reveal the users' locations at the time they post each Tweet. This "Tweet With Location" function is off by default, so Twitter users must opt in to the service. In addition, Twitter users may delete their past location data.

40. When Twitter users want to post a Tweet that includes a link to a website, they can use Twitter's link service, which converts the longer website link into a shortened link that begins with http://t.co. This link service measures how many times a link has been clicked.

41. A Twitter user can "follow" other Twitter users, which means subscribing to those users' Tweets and site updates. Each user profile page includes a list of the people who are following that user (*i.e.*, the user's "followers" list) and a list of people whom that user follows (*i.e.*, the user's "following" list). Twitters users can "unfollow" users whom they previously followed, and they can also adjust the privacy settings for their profile so that their Tweets are visible only to the people whom they approve, rather than to the public (which is the default setting). A Twitter user can also group other Twitter users into "lists" that display on the right side of the user's home page on Twitter. Twitter also provides users with a list of "Who to Follow," which includes a few recommendations of Twitter accounts that the user may find interesting, based on the types of accounts that the user is already following and who those people follow.

42. In addition to posting Tweets, a Twitter user can also send Direct Messages (DMs) to one of his or her followers. These messages are typically visible only to the sender and the recipient, and both the sender and the recipient have the power to delete the message from the inboxes of both users. As of January 2012, Twitter displayed only the last 100 DMs for a particular user, but older DMs are stored on Twitter's database.

43. Twitter users can configure the settings for their Twitter accounts in numerous ways. For example, a Twitter user can configure his or her Twitter account to send updates to the user's mobile phone, and the user can also set up a "sleep time" during which Twitter updates will not be sent to the user's phone.

44. Twitter includes a search function that enables its users to search all public Tweets for keywords, usernames, or subject, among other things. A Twitter user may save up to 25 past searches.

45. Twitter users can connect their Twitter accounts to third-party websites and applications, which may grant these websites and applications access to the users' public Twitter profiles.

46. If a Twitter user does not want to interact with another user on Twitter, the first user can "block" the second user from following his or her account.

47. In some cases, Twitter users may communicate directly with Twitter about issues relating to their account, such as technical problems or complaints. Social-networking providers like Twitter typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. Twitter may also

suspend a particular user for breaching Twitter's terms of service, during which time the Twitter user will be prevented from using Twitter's services.

48. As explained herein, information stored in connection with a Twitter account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Twitter user's account information, IP log, stored electronic communications, and other data retained by Twitter, can indicate who has used or controlled the Twitter account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, communications, "tweets" (status updates) and "tweeted" photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Twitter account at a relevant time. Further, Twitter account activity can show how and when the account was accessed or used. For example, as described herein, Twitter logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Twitter access, use, and events relating to the crime under investigation. Additionally, Twitter builds geo-location into some of its services. If enabled by the user, physical location is automatically added to "tweeted" communications. This geographic and timeline information may tend to either inculpate

or exculpate the Twitter account owner. Last, Twitter account activity may provide relevant insight into the Twitter account owner's state of mind as it relates to the offense under investigation. For example, information on the Twitter account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a criminal plan) or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

49. Therefore, the computers of Twitter are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Twitter, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

50. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Twitter to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

51. Based on the aforementioned factual information, I respectfully request the Court issued the proposed search warrant.

52. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

53. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

John V. Ferreira
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me in my presence on this 8th day of September, 2015.

THE HONORABLE GWYNNE E. BIRZER
United States Magistrate Judge

# ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with the Twitter profile with username **@jeri_up_down** at **https://twitter.com/Jeri_up_down** that is stored at premises owned, maintained, controlled, or operated by Twitter, a company headquartered in San Francisco, California.

# ATTACHMENT B

## Particular Things to be Seized

### I. Information to be disclosed by Twitter

To the extent that the information described in Attachment A is within the possession, custody, or control of Twitter, including any messages, records, files, logs, or information that have been deleted but are still available to Twitter, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Twitter is required to disclose the following information to the government for each account listed in Attachment A:

a. All identity and contact information, including full name, e-mail address, physical address (including city, state, and zip code), date of birth, gender, hometown, occupation, and other personal identifiers;

b. All past and current usernames, account passwords, and names associated with the account;

c. The dates and times at which the account and profile were created, and the Internet Protocol ("IP") address at the time of sign-up;

d. All IP logs and other documents showing the IP address, date, and time of each login to the account;

e. All data and information associated with the profile page, including photographs, "bios," and profile backgrounds and themes;

f. All "Tweets" and Direct Messages sent, received, "favorited," or retweeted by the account, and all photographs or images included in those Tweets and Direct Messages;

g. All information from the "Connect" tab for the account, including all lists of Twitter users who have favorited or retweeted Tweets posted by the account, as well as a list of all Tweets that include the username associated with the account (*i.e.*, "mentions" or "replies");

h. All photographs and images in the user gallery for the account;

i. All location data associated with the account, including all information collected by the "Tweet With Location" service;

j. All information about the account's use of Twitter's link service, including all longer website links that were shortened by the service, all resulting shortened

links, and all information about the number of times that a link posted by the account was clicked;

k. All data and information that has been deleted by the user;

l. A list of all of the people that the user follows on Twitter and all people who are following the user (*i.e.*, the user's "following" list and "followers" list);

m. A list of all users that the account has "unfollowed" or blocked;

n. All "lists" created by the account;

o. All information on the "Who to Follow" list for the account;

p. All privacy and account settings;

q. All records of Twitter searches performed by the account, including all past searches saved by the account;

r. All information about connections between the account and third-party websites and applications;

s. All records pertaining to communications between Twitter and any person regarding the user or the user's Twitter account, including contacts with support services, and all records of actions taken, including suspensions of the account.

**II. Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of 18 U.S.C. 2252 and 2252A involving Joshua Haskins since the date of creation of the account, including, for each user ID identified on Attachment A, information pertaining to the following matters:

a. The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

b. Evidence indicating how and when the Twitter account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Twitter account owner;

c. Evidence indicating the Twitter account user's state of mind as it relates to the crimes under investigation;

d. Child pornography;

e. Child erotica or pictures of minors;

f. Communications between the Twitter account user and others related to the possession, receipt, distribution or production of child pornography;

g. Records showing the identity of the person(s) who communicated with the Twitter account user about matters relating to sexual explicit conduct with children, including records that help reveal their whereabouts.